IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WESTERN DIGITAL TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 19-cv-04127 |

## COMPLAINT

Plaintiff Western Digital Technologies, Inc. ("Western Digital" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at

least the fully interactive, commercial Internet stores operating under the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of Western Digital's federally registered trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using counterfeit versions of Western Digital's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Western Digital substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Western Digital to combat online counterfeiters who trade upon Western Digital's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products, including digital storage devices and systems, using counterfeit versions of Western Digital's federally registered trademarks (the "Counterfeit Western Digital Products"). The Defendants create the Defendant Internet Stores by the dozens and design them to appear to be selling genuine Western Digital products, while actually selling Counterfeit Western Digital Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Western Digital Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to

conceal both their identities and the full scope and interworking of their counterfeiting operation. Western Digital is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Western Digital Products over the Internet. Western Digital has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiffs**

4. Plaintiff Western Digital Technologies, Inc. is a corporation duly organized and existing under the laws of the State of Delaware having its registered office at 5601 Great Oaks Parkway, San Jose, California 95138.

5. Founded in 1970, Western Digital has a long history in the electronics industry. For more than 40 years, Western Digital has been a leading developer and manufacturer of storage technologies and solutions that enable people, businesses, and other organizations to create, leverage, experience and preserve data. As an industry leader, Western Digital only produces and offers products that have been subjected to its rigorous manufacturing standards and stringent pre-shipping testing and quality control.

6. Western Digital is an internationally recognized manufacturer, distributor and retailer of a broad range of products, but its primary products include hard disk drives, solid state drives, and other related digital storage products and solutions, all of which prominently display its famous, internationally recognized and federally registered trademarks (collectively, the "Western Digital Products"). Western Digital Products have become enormously popular, driven by Western Digital's arduous quality standards and innovative design. Among the purchasing

public, genuine Western Digital Products are instantly recognizable as such. In the United States and around the world, the Western Digital brand has come to symbolize high quality and reliability in data storage solutions, and Western Digital Products are among the most recognizable digital storage products in the world.

7. Western Digital Products are distributed and sold to consumers through Western Digital's wdc.com website, as well as through authorized retailers throughout the United States, including leading electronics stores Best Buy, Costco Wholesale, and Staples, as well as numerous online retailers including newegg.com, computerdirect.com, and others. Western Digital's hard drives are regularly purchased and incorporated into computers and laptops sold by leading computer manufacturers.

8. Western Digital incorporates a variety of distinctive marks in the design of its various Western Digital Products. As a result of its longstanding use, Western Digital owns common law trademark rights in its WESTERN DIGITAL, WD and other trademarks. Western Digital has also registered its trademarks with the United States Patent and Trademark Office. Western Digital Products include at least one of Western Digital's registered trademarks. Western Digital uses its trademarks in connection with the marketing of its Western Digital Products, including the following marks, which are collectively referred to as the "WD Trademarks."

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 1,016,514 | WESTERN DIGITAL | For: integrated circuits in class 009. |
| 3,040,756 | WESTERN DIGITAL | For: computer products, namely hard drives and disk drives in class 009. |
| 3,062,297 | WD | For: computer products, namely hard drives in class 009. |

| | | |
|---|---|---|
| 3,130,924 | *WD logo* | For: computer products, namely hard drives and disk drives in class 009. |
| 4,628,454 | *WD logo* | For: online retail store services provided via a global computer network featuring computer hardware, computer storage devices, computer software, computer peripherals, media players and protective cases for hard drives in class 035. |
| 4,419,400 | WD RED | For: computer disk drives in class 009. |
| 4,448,549 | WD BLUE | For: computer disk drives in class 009. |
| 4,448,551 | WD BLACK | For: computer disk drives in class 009. |
| 4,448,552 | WD GREEN | For: computer disk drives in class 009. |
| 4,537,757 | WD ELEMENTS | For: computer storage devices in the nature of hard disk drives, digital disk drives, media players, solid state drives and computer peripherals; computer products, namely, data storage products in the nature of digital electronic devices, namely, disk drives and hybrid disk drives, for organizing, receiving, transmitting, managing, storing, securing, encrypting, centralizing, playing, streaming, backing-up, transferring, customizing, navigating, playing, viewing, accessing, sharing, synchronizing, modifying, reviewing, uploading, and downloading text, data, image, audio and video files, information, or media stored on, streamed through, hosted on or run on data storage devices, hard drives, disk drives, solid state drives, and media players in class 009. |
| 4,680,076 | WD PURPLE | For: data storage devices, namely, hard disk drives, digital disk drives, media players, |

| | | |
|---|---|---|
| | | solid state drives, blank digital storage media, hybrid hard drives and computer peripherals; computer storage devices, namely, computer memory hardware and hard drives for computers; digital electronic devices, namely, hybrid hard drives and hybrid disk drives for organizing, receiving, playing, transmitting, managing, storing, securing, encrypting, centralizing, backing-up, transferring, customizing, navigating, playing, viewing, accessing, sharing, streaming, synchronizing, modifying, reviewing, uploading, and downloading text, data, image, audio and video files, information, or media stored on, streamed through, hosted on or run on data storage devices, hard drives, disk drives, solid state drives, media players and internet servers; removable hard drive based computer backup system; computer hardware for upload, storage, retrieval, download, transmission and delivery of digital content; computer software for use in the synchronization, back-up, playing and encryption and decryption of digital files, including audio, video, text, binary, still images, graphics and multimedia files; computer network storage devices, namely, storage and backup of electronic data either locally or via a telecommunications network; networking software, namely, software for setting up and configuring managed storage and online backup services over wide area networks; computer software and hardware for synchronizing and connecting local network storage and global computer networks, for upload, storage, retrieval, download, transmission and delivery of digital content, for storing and managing data on local and internet-based file servers, for processing storage of data; computer firmware for data storage, data retrieval, data access, data backup, data replication, data availability, data recovery, data translation and data conversion; computer hardware for use in video |

| | | |
|---|---|---|
| | | surveillance applications and systems, digital or personal video recorders, internet protocol televisions, set-top boxes, audio systems, digital signage, karaoke players, computer gaming devices and dvd recorders in class 009.<br><br>For: maintenance of data storage devices, hard drives, disk drives, solid state drives, media players and computer peripherals in class 037. |
| 3,793,628 | MY PASSPORT | For: computer products, namely, disk drives, computer storage units, namely, computer hardware for storage of digital data, and computer peripherals, excluding mouse pads in class 009. |

9. The above U.S. registrations for the WD Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The WD Trademarks have been used exclusively and continuously by Western Digital, some since as early as 1971, and have never been abandoned. The registrations for the WD Trademarks constitute *prima facie* evidence of their validity and of Western Digital's exclusive right to use the WD Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the above-listed WD Trademarks are attached hereto as **Exhibit 1**.

10. The WD Trademarks are exclusive to Western Digital and are displayed extensively on Western Digital Products and in Western Digital's marketing and promotional materials. Western Digital Products have long been among the most popular and recognizable digital storage products and solutions in the world, and have been extensively promoted and advertised at great expense. In fact, Western Digital has expended millions of dollars annually in promoting and marketing featuring the WD Trademarks. For instance, the WD Trademarks have been widely publicized through publications in many major international magazines, including, without

limitation, Dwell, Wired, Rolling Stone, PC Adviser, PC Pro, and The Gadget Show Magazine. Because of these and other factors, the WD Trademarks are famous throughout the United States.

11. The WD Trademarks are distinctive when applied to storage technologies and solutions, signifying to the purchaser that the products come from Western Digital and are manufactured to Western Digital's quality standards. Western Digital maintains rigorous quality control standards for all of its Western Digital Products, and all Western Digital Products are subject to these strict guidelines by Western Digital prior to distribution and sale. The WD Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the WD Trademarks is of incalculable and inestimable value to Western Digital.

12. Since at least as early as 1992, Western Digital has operated a website where it promotes and sells genuine Western Digital Products at wdc.com. Sales of Western Digital Products via the wdc.com website represent an important portion of Western Digital's business. Western Digital's website wdc.com features proprietary content, images and designs exclusive to Western Digital.

13. Western Digital has expended substantial time, money, and other resources in developing, advertising and otherwise promoting and protecting the WD Trademarks. As a result, products bearing the WD Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Western Digital. Western Digital Products have become among the most popular of their kind in the world. The widespread fame, outstanding reputation, and significant goodwill associated with the Western Digital brand have made the WD Trademarks invaluable assets of Western Digital.

14. Western Digital proactively protects the WD Trademarks against Counterfeit Western Digital Products. One measure of protection used by Western Digital is its recording of WD Trademarks with U.S. Customs authorities, which entitles Western Digital to specifically prevent the import of Counterfeit Western Digital Products. Another measure Western Digital undertakes to protect the WD Trademarks is execution of its worldwide anti-counterfeiting program. Western Digital's anti-counterfeiting program routinely and regularly investigates suspicious online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, Western Digital has identified, investigated and removed thousands of fully interactive online marketplace storefronts and listings on platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate.

**The Defendants**

15. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive commercial online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit Western Digital Products to consumers within the United States, including the State of Illinois.

16. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of the WD Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for

9

Western Digital to learn Defendants' true identities and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Western Digital will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

17. The success of the Western Digital brand has resulted in its significant counterfeiting. To combat against counterfeiting, Western Digital routinely investigates suspicious storefronts and listings on online marketplaces, including the Defendant Internet Stores that were offering for sale and selling Counterfeit Western Digital Products to consumers in this Judicial District and throughout the United States. Despite Western Digital's enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores. Internet websites similar to the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

18. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal. The Defendant Internet Stores often include content and images that make it very difficult for consumers to distinguish such counterfeit listings from an authorized distributor's or reseller's listing. Many Defendants further

perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Western Digital has not licensed or authorized Defendants to use any of the WD Trademarks, and none of the Defendants are authorized retailers of genuine Western Digital Products.

19. Many Defendants also deceive unknowing consumers by using the WD Trademarks without authorization within the content, text, and/or meta tags of their online marketplace listings in order to attract consumers searching for Western Digital Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Western Digital Products. Other Defendants only show the WD Trademarks in product images, while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Western Digital Products.

20. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. On information and belief, Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

21. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Counterfeit

Western Digital Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Western Digital Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, and the use of the same text and images, including content copied from Western Digital's wdc.com website.

22. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

23. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Western Digital's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

24. Defendants, without any authorization or license from Western Digital, have knowingly and willfully used and continue to use the WD Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Western Digital Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Western Digital Products into the United States, including Illinois.

25. Defendants' unauthorized use of the WD Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Western Digital Products, including the sale of Counterfeit Western Digital Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Western Digital.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

26. Western Digital hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25.

27. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered WD Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The WD Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Western Digital Products offered, sold or marketed under the WD Trademarks.

28. Defendants have sold, offered to sell, marketed, distributed and advertised, and are still selling, offering to sell, marketing, distributing and advertising products using counterfeit reproductions of the WD Trademarks without Western Digital's permission.

29. Western Digital is the exclusive owner of the WD Trademarks in the United States. Western Digital's United States Registrations for the WD Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Western Digital's rights in the WD Trademarks, and are willfully infringing and intentionally using counterfeits of the WD Trademarks. Defendants' willful, intentional and unauthorized use of the WD Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Western Digital Products among the general public.

30. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

31. Western Digital has no adequate remedy at law, and if Defendants' actions are not enjoined, Western Digital will continue to suffer irreparable harm to its reputation and the goodwill of its well-known WD Trademarks.

32. The injuries and damages sustained by Western Digital have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Western Digital Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

33. Western Digital hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 32.

34. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Western Digital Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Western Digital or the origin, sponsorship, or approval of Defendants' Counterfeit Western Digital Products by Western Digital.

35. By using the WD Trademarks on the Counterfeit Western Digital Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Western Digital Products.

36. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Western Digital Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

37. Western Digital has no adequate remedy at law and, if Defendants' actions are not enjoined, Western Digital will continue to suffer irreparable harm to its reputation and the goodwill of its Western Digital brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

38. Western Digital hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 37.

39. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Western Digital Products as those of Western Digital; causing a likelihood of confusion and/or misunderstanding as to the source of their goods; causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Western Digital Products; representing that the Counterfeit Western Digital Products have Western Digital's approval when they do not; and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

40. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

41. Western Digital has no adequate remedy at law, and Defendants' conduct has caused Western Digital to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Western Digital will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Western Digital prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the WD Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Western Digital Product or is not authorized by Western Digital to be sold in connection with the WD Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Western Digital Product or any other product produced by Western Digital, that is not Western Digital's or not produced under the authorization, control, or supervision of Western Digital and approved by Western Digital for sale under the WD Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Western Digital Products are those sold under the authorization, control or supervision of Western Digital, or are sponsored by, approved by, or otherwise connected with Western Digital;

   d. further infringing the WD Trademarks and damaging Western Digital's goodwill; and

16

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Western Digital, nor authorized by Western Digital to be sold or offered for sale, and which bear any of Western Digital's trademarks, including the WD Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Western Digital's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing, and Yahoo (collectively, the "Third Party Providers") shall:

    a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the WD Trademarks;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the WD Trademarks; and

    c. take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index;

3) That Defendants account for and pay to Western Digital all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for

17

infringement of the WD Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Western Digital be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the WD Trademarks;

5) That Western Digital be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 19th day of June 2019.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Counsel for Plaintiff Western Digital Technologies, Inc.*