**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WESTERN DIGITAL TECHNOLOGIES, INC., | Case No. 19-cv-04127 |
| Plaintiff, | **Judge John Z. Lee** |
| v. | **Magistrate Judge Jeffrey T. Gilbert** |
| TANG WU 888 SHOP, et al., | |
| Defendants. | |

**Declaration of Lennis N. Collins**

## **DECLARATION OF LENNIS N. COLLINS**

I, Lennis N. Collins, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am Associate General Counsel at Western Digital Corporation, the parent company of Western Digital Technologies, Inc. ("Western Digital"). I am knowledgeable about Western Digital's business activities, business records, products, and the trademarks owned by Western Digital. I make this declaration from matters within my own knowledge save where otherwise stated.

3. Plaintiff Western Digital Technologies, Inc. is a corporation duly organized and existing under the laws of the State of Delaware having its registered office at 5601 Great Oaks Parkway, San Jose, California 95119.

4. Founded in 1970, Western Digital has a long history in the electronics industry. For more than 40 years, Western Digital has been a leading developer and manufacturer of storage technologies and solutions that enable people, businesses, and other organizations to create, leverage, experience and preserve data. As an industry leader, Western Digital only produces and offers products that have been subjected to its rigorous manufacturing standards and stringent pre-shipping testing and quality control.

5. Western Digital is an internationally recognized manufacturer, distributor and retailer of a broad range of products, but its primary products include hard disk drives, solid state drives, and other related digital storage products and solutions, all of which prominently

display its famous, internationally recognized and federally registered trademarks (collectively, the "Western Digital Products").

6. Western Digital Products have become enormously popular, driven by Western Digital's arduous quality standards and innovative design. Among the purchasing public, genuine Western Digital Products are instantly recognizable as such. In the United States and around the world, the Western Digital brand has come to symbolize high quality and reliability in data storage solutions, and Western Digital Products are among the most recognizable digital storage products in the world.

7. Western Digital Products are distributed and sold to consumers through Western Digital's wdc.com website, as well as through authorized retailers throughout the United States, including leading electronics stores Best Buy, Costco Wholesale, and Staples, as well as numerous online retailers including newegg.com, computerdirect.com, and others. Western Digital's hard drives are regularly purchased and incorporated into computers and laptops sold by leading computer manufacturers.

8. Western Digital incorporates a variety of distinctive marks in the design of its various Western Digital Products. As a result of its longstanding use, Western Digital owns common law trademark rights in its WESTERN DIGITAL, WD and other trademarks. Western Digital has also registered its trademarks with the United States Patent and Trademark Office. Western Digital Products include at least one of Western Digital's registered trademarks. Western Digital uses its trademarks in connection with the marketing of its Western Digital Products, including the following marks, which are collectively referred to as the "WD Trademarks."

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 1,016,514 | WESTERN DIGITAL | For: integrated circuits in class 009. |
| 3,040,756 | WESTERN DIGITAL | For: computer products, namely hard drives and disk drives in class 009. |
| 3,062,297 | WD | For: computer products, namely hard drives in class 009. |
| 3,130,924 | [WD logo] | For: computer products, namely hard drives and disk drives in class 009. |
| 4,628,454 | [WD logo] | For: online retail store services provided via a global computer network featuring computer hardware, computer storage devices, computer software, computer peripherals, media players and protective cases for hard drives in class 035. |
| 4,419,400 | WD RED | For: computer disk drives in class 009. |
| 4,448,549 | WD BLUE | For: computer disk drives in class 009. |
| 4,448,551 | WD BLACK | For: computer disk drives in class 009. |
| 4,448,552 | WD GREEN | For: computer disk drives in class 009. |
| 4,537,757 | WD ELEMENTS | For: computer storage devices in the nature of hard disk drives, digital disk drives, media players, solid state drives and computer peripherals; computer products, namely, data storage products in the nature of digital electronic devices, namely, disk drives and hybrid disk drives, for organizing, receiving, transmitting, managing, storing, securing, encrypting, centralizing, playing, streaming, backing-up, transferring, customizing, navigating, |

| | | |
|---|---|---|
| | | playing, viewing, accessing, sharing, synchronizing, modifying, reviewing, uploading, and downloading text, data, image, audio and video files, information, or media stored on, streamed through, hosted on or run on data storage devices, hard drives, disk drives, solid state drives, and media players in class 009. |
| 4,680,076 | WD PURPLE | For: data storage devices, namely, hard disk drives, digital disk drives, media players, solid state drives, blank digital storage media, hybrid hard drives and computer peripherals; computer storage devices, namely, computer memory hardware and hard drives for computers; digital electronic devices, namely, hybrid hard drives and hybrid disk drives for organizing, receiving, playing, transmitting, managing, storing, securing, encrypting, centralizing, backing-up, transferring, customizing, navigating, playing, viewing, accessing, sharing, streaming, synchronizing, modifying, reviewing, uploading, and downloading text, data, image, audio and video files, information, or media stored on, streamed through, hosted on or run on data storage devices, hard drives, disk drives, solid state drives, media players and internet servers; removable hard drive based computer backup system; computer hardware for upload, storage, retrieval, download, transmission and delivery of digital content; computer software for use in the synchronization, back-up, playing and encryption and decryption of digital files, including audio, video, text, binary, still images, graphics and multimedia files; computer network storage devices, namely, storage and backup of electronic data either locally or via a telecommunications network; networking software, namely, software for setting up and configuring managed storage and online backup services over wide area networks; computer software and hardware for synchronizing |

| | | |
|---|---|---|
| | | and connecting local network storage and global computer networks, for upload, storage, retrieval, download, transmission and delivery of digital content, for storing and managing data on local and internet-based file servers, for processing storage of data; computer firmware for data storage, data retrieval, data access, data backup, data replication, data availability, data recovery, data translation and data conversion; computer hardware for use in video surveillance applications and systems, digital or personal video recorders, internet protocol televisions, set-top boxes, audio systems, digital signage, karaoke players, computer gaming devices and dvd recorders in class 009.<br><br>For: maintenance of data storage devices, hard drives, disk drives, solid state drives, media players and computer peripherals in class 037. |
| 3,793,628 | MY PASSPORT | For: computer products, namely, disk drives, computer storage units, namely, computer hardware for storage of digital data, and computer peripherals, excluding mouse pads in class 009. |

9. The above U.S. registrations for the WD Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The WD Trademarks have been used exclusively and continuously by Western Digital, some since as early as 1971, and have never been abandoned. True and correct copies of the United States Registration Certificates for the above-listed WD Trademarks are attached hereto as **Exhibit 1**.

10. The WD Trademarks are exclusive to Western Digital and are displayed extensively on Western Digital Products and in Western Digital's marketing and promotional materials.

Western Digital Products have long been among the most popular and recognizable digital storage products and solutions in the world, and have been extensively promoted and advertised at great expense. In fact, Western Digital has expended millions of dollars annually in promoting and marketing featuring the WD Trademarks. For instance, the WD Trademarks have been widely publicized through publications in many major international magazines, including, without limitation, Dwell, Wired, Rolling Stone, PC Adviser, PC Pro, and The Gadget Show Magazine. Because of these and other factors, the WD Trademarks are famous throughout the United States.

11. The WD Trademarks are distinctive when applied to storage technologies and solutions, signifying to the purchaser that the products come from Western Digital and are manufactured to Western Digital's quality standards. Western Digital maintains rigorous quality control standards for all of its Western Digital Products, and all Western Digital Products are subject to these strict guidelines by Western Digital prior to distribution and sale. The WD Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the WD Trademarks is of incalculable and inestimable value to Western Digital.

12. Since at least as early as 1992, Western Digital has operated a website where it promotes and sells genuine Western Digital Products at wdc.com. Sales of Western Digital Products via the wdc.com website represent an important portion of Western Digital's business. Western Digital's website wdc.com features proprietary content, images and designs exclusive to Western Digital.

13. Western Digital has expended substantial time, money, and other resources in developing, advertising and otherwise promoting and protecting the WD Trademarks. As

a result, products bearing the WD Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Western Digital. Western Digital Products have become among the most popular of their kind in the world. The widespread fame, outstanding reputation, and significant goodwill associated with the Western Digital brand have made the WD Trademarks invaluable assets of Western Digital.

14. Western Digital proactively protects the WD Trademarks against Counterfeit Western Digital Products (defined below). One measure of protection used by Western Digital is its recording of WD Trademarks with U.S. Customs authorities, which entitles Western Digital to specifically prevent the import of Counterfeit Western Digital Products. Another measure Western Digital undertakes to protect the WD Trademarks is execution of its worldwide anti-counterfeiting program. Western Digital's anti-counterfeiting program routinely and regularly investigates suspicious online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, Western Digital has identified, investigated and removed thousands of fully interactive online marketplace storefronts and listings on platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate.

15. The success of the Western Digital brand has resulted in its significant counterfeiting. To combat against counterfeiting, Western Digital routinely investigates suspicious storefronts and listings on online marketplaces, including the fully interactive, commercial Internet stores operating under at least the Defendants' Online Marketplace Accounts identified in Schedule A to the Amended Complaint (collectively, the "Defendant Internet Stores"), which were offering for sale and/or selling unauthorized

and unlicensed counterfeit products, including digital storage devices and systems, using counterfeit versions of Western Digital's federally registered WD Trademarks (collectively, the "Counterfeit Western Digital Products") to consumers in this Judicial District and throughout the United States. Despite Western Digital's enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores.

16. I perform, supervise, and/or direct investigations related to Internet-based infringement of the WD Trademarks. Our investigation shows that Defendants are using the Defendant Internet Stores to sell Counterfeit Western Digital Products from foreign countries such as China to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the Defendant Internet Stores and determined that Counterfeit Western Digital Products were being offered for sale to residents of the United States, including Illinois residents. This conclusion was reached through visual inspection of the products listed for sale on each Defendant Internet Store, the price at which the Counterfeit Western Digital Products were offered for sale, other features commonly associated with online marketplace listings selling counterfeit products, and because Defendants and their Defendant Internet Stores do not conduct business with Western Digital and do not have the right or authority to use the WD Trademarks for any reason. In addition, each Defendant Internet Store offered shipping to the United States, including Illinois. True and correct copies of screenshot printouts showing the active Defendant Internet Stores reviewed are attached as **Exhibit 2**.

17. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S.

dollars via credit cards, Alipay, Amazon Pay, Western Union, and/or PayPal. The Defendant Internet Stores often include content and images that make it very difficult for consumers to distinguish such counterfeit listings from an authorized distributor's or reseller's listing. Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Western Digital has not licensed or authorized Defendants to use any of the WD Trademarks, and none of the Defendants are authorized retailers of genuine Western Digital Products.

18. Many Defendants also deceive unknowing consumers by using the WD Trademarks without authorization within the content, text, and/or meta tags of their online marketplace listings in order to attract consumers searching for Western Digital Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Western Digital Products. Other Defendants only show the WD Trademarks in product images, while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Western Digital Products.

19. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. On information and belief, Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A to the Amended Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store

registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

20. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Counterfeit Western Digital Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Western Digital Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings and the use of the same text and images, including content copied from Western Digital's wdc.com website.

21. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

22. Counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can

continue operation in spite of Western Digital's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this Court.

23. Monetary damages cannot adequately compensate Western Digital for ongoing infringement because monetary damages fail to address the loss of control of and damage to Western Digital's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Western Digital's reputation and goodwill by acts of infringement.

24. Western Digital's goodwill and reputation are irreparably damaged when the WD Trademarks are used in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Western Digital. Moreover, brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to Western Digital's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

25. Western Digital is further irreparably harmed by the unauthorized use of the WD Trademarks because counterfeiters take away Western Digital's ability to control the nature and quality of the Counterfeit Western Digital Products. Loss of quality control over goods offered for sale or sold under the WD Trademarks and, in turn, loss of control over our reputation, is neither calculable nor precisely compensable.

26. The use of the WD Trademarks in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Western Digital is likely causing and will

continue to cause consumer confusion, which weakens Western Digital's brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit Western Digital Products he or she has purchased originated from Western Digital will come to believe that Western Digital offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine Western Digital Products, resulting in a loss or undermining of Western Digital's reputation and goodwill. Indeed, there is damage to Western Digital's reputation and goodwill even if a consumer knows that the goods he or she is purchasing are counterfeit. Prospective consumers who see inferior Counterfeit Western Digital Products used by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Western Digital and the WD Trademarks. Such post-sale confusion results in damage to Western Digital's reputation and correlates to a loss of unquantifiable future sales.

27. Western Digital is further irreparably damaged due to a loss of exclusivity. Western Digital Products are meant to be exclusive. Western Digital's extensive marketing efforts and innovative designs are aimed at growing and sustaining sales. The WD Trademarks are distinctive and signify to consumers that the products originate from Western Digital and are manufactured to Western Digital's high quality standards. When counterfeiters use the WD Trademarks to offer for sale or sell goods without Western Digital's authorization, the exclusivity of the Western Digital Products, as well as Western Digital's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

28. Western Digital will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this the 19th day of June 2019 at Irvine, California.

[Lennis N. Collins]